UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JERMAINE MORRIS, | Civil Action No.: 18-12702 |
| | Honorable Matthew F. Leitman |
| Plaintiff | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

_____/

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 10, 11]**

Plaintiff Jermaine Morris appeals the final decision of defendant Commissioner of Social Security, which denied his application for supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence and thus **RECOMMENDS** that:

- Morris's motion [ECF No. 10] be **DENIED**;
- the Commissioner's motion [ECF No. 11] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under to sentence four and sentence six of 42 U.S.C. § 405(g).

I.   BACKGROUND

A.   **Background and Disability Application**

Born October 3, 1972, Morris was 42 years old on the application date, June 29, 2015. [ECF No. 8-5, Tr. 172]. He has past relevant work as an assembly line worker. [ECF No. 8-2, Tr. 49-50]. Morris alleges disability because of back and knee pain, carpal tunnel, diabetes, hypertension, neuropathy, GERD and chronic kidney disease. [ECF No. 8-3, Tr. 91-92].

After the Commissioner denied his application initially, Morris requested a hearing, during which he and a vocational expert (VE) testified. [ECF No. 8-2, Tr. 39-74]. In a November 2017 written decision, the ALJ found Morris not disabled. [*Id.*, Tr. 17-32]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [ECF No. 8-2, Tr. 1-6]. Morris timely filed for judicial review. [ECF No. 1].

B.   **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Morris was not disabled. At the first step, he found that Morris had not engaged in substantial gainful activity since the application date, June 29, 2015. [ECF No. 8-2, Tr. 23]. At the second step, he found that Morris had the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy, bilateral carpal tunnel syndrome, and disease mellitus with mild diabetic neuropathy. [*Id.*].

Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*].

Between the third and fourth steps, the ALJ found that Morris had the RFC to perform sedentary work,

> except the claimant is able to lift up to 10 pounds occasionally, stand and walk for about two hours, and sit for up to six hours in an 8-hour workday, with normal breaks. The claimant requires a sit/stand option allowing him to sit or stand alternatively, provided this person is not off task more than 10-percent of the work period. The claimant is limited to occasional pushing and pulling. The claimant cannot perform the operation of foot controls with the left or right foot. The claimant can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, or scaffolds. The claimant is limited to frequent bilateral handling of objects, defined as gross manipulation, and fingering, defined as fine manipulation of items no smaller than the size of a ballpoint pen. The claimant is limited to jobs that can he performed while using a handheld assistive device required for uneven terrain or prolonged ambulation and the

4

> contralateral upper extremity can he used to lift and carry up to the exertional limitations. The claimant must avoid all exposure to excessive vibration and unprotected heights. The claimant must avoid even moderate use of hazardous moving machinery.

[*Id.*, Tr. 24].

At step four, the ALJ found that Morris could not perform any past relevant work. [*Id.*, Tr. 29-30]. At the final step, after considering Morris's age, education, work experience, RFC and the testimony of the VE, the ALJ concluded that there were jobs in significant numbers that Morris could perform, including positions as a packer, sorter and assembler. [*Id.*, Tr. 31].

## II.   ANALYSIS

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the

evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Morris objects to the ALJ's step three analysis and findings. [ECF No. 10, PageID.535-41]. "At Step Three of the administrative sequence, a claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled and entitled to benefits." *Laurain v. Comm'r. of Soc. Sec.,* 2019 WL 472308, at *5 (E.D. Mich. Jan. 3, 2019), *adopted,* 2019 WL 462981 (E.D. Mich. Feb. 6, 2019) (internal quotations omitted). A claimant who does not meet a listing may present evidence that the alleged impairment is equally severe. 20 C.F.R. § 404.1526(b). The claimant "must offer medical findings equal to the severity of the requirements, and the findings must be supported by medically acceptable clinical and laboratory techniques." *Davis v. Berryhill*, No. CV 16-14470, 2017 WL 5493137, at *3 (E.D. Mich. Nov. 16, 2017), *adopted*, 2017 WL 6206368 (E.D. Mich. Dec. 8, 2017).

The Court finds no error with the ALJ's step three analysis and recommends that his decision be affirmed.

6

### A.

Morris first argues that the ALJ failed to obtain an expert medical opinion on medical equivalency of the listings, which he asserts is required by Social Security Ruling (SSR) 17-2p. [*Id.*, PageID.535-37]. Morris states that the "objective findings require the ALJ to obtain a medical expert opinion in accordance with SSR 17-2p because the requirements of Listing 1.04(A) are nearly all met." [*Id.*, PageID.537].

Previously, courts found that the regulations required ALJs to obtain an expert opinion on medical equivalency. *See Hardy v. Comm'r of Soc. Sec.*, No. CV 15-10010, 2016 WL 1128085, at *1 (E.D. Mich. Mar. 23, 2016) (citing SSR 96-6p). But SSR 17-2p replaced SSR 96-p6. *See* SSR 17-2p, 2017 WL 3928306, at *1 (S.S.A. Mar. 27, 2017). Morris relies on the following language of SSR 17-2p to support his argument that the regulation requires an expert medical opinion.

> To demonstrate the required support of a finding that an individual is disabled based on medical equivalence at step 3, the record must contain one of the following:
>
> > 1. A prior administrative medical finding from a[ ] [medical consultant] or [psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or
>
> > 2. [Medical expert] evidence, which may include testimony or written responses to interrogatories,

>> obtained at the hearings level supporting the medical equivalence finding, or
>
> 3. A report from the [Appeals Council's] medical support staff supporting the medical equivalence finding.

[ECF No. 10, PageID.535, (quoting SSR 17-2p, 2017 WL 3928306, at *3)]. That language "makes clear that it applies only when the ALJ finds that a claimant's impairments *are* medically equivalent to a Listing. Here, the ALJ found the opposite." *Cooper v. Comm'r of Soc. Sec.*, No. CV 18-12611, 2019 WL 2240711, at *4 (E.D. Mich. Apr. 8, 2019), *adopted*, 2019 WL 2208151 (E.D. Mich. May 22, 2019) (emphasis in original).

Instead of requiring a medical opinion on equivalence in every case, SSR 17-2p allows an ALJ to render a decision without such an opinion if the "evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment." 2017 WL 3928306 at *4. Courts have described this language as meaning that "an ALJ is not required to obtain a medical expert's opinion before making a finding that an individual's impairments do not meet or equal a listing impairment." *Marvin v. Comm'r of Soc. Sec.*, No. 1:17-CV-330, 2018 WL 4214339, at *3 n.3 (W.D. Mich. Aug. 10, 2018), *adopted*, 2018 WL 4208682 (W.D. Mich. Sept. 4, 2018). *See also Mitchell v. Comm'r of Soc. Sec.*, No. 1:18-CV-808, 2019 WL 2125540, at *3 (W.D. Mich. Apr. 19, 2019), *adopted*, 2019

8

WL 2120121 (W.D. Mich. May 15, 2019) ("In SSR 17-2p, the Social Security Administration clarified that an ALJ is not required to obtain a medical expert's opinion before making a finding that an individual's impairments do not equal a listing impairment.").

But SSR 17-2p eliminates the requirement of a medical opinion only when the "evidence does not *reasonably support*" a finding of equivalence. 2017 WL 3928306 at *4 (emphasis added). The Commissioner suggests that an ALJ's failure to obtain a medical opinion can never be reversible error. [ECF No. 11, PageID.552]. The Court disagrees; if the evidence *does* "reasonably support" a finding of equivalence, the ALJ should seek a medical opinion. In other words, courts can consider if "the proper exercise of discretion favored additional medical evidence." *Anthony v. Comm'r of Soc. Sec*, No. 18-11717, 2019 WL 3296996, at *5 (E.D. Mich. July 23, 2019).

For the reasons described below, the Court finds that the ALJ did not abuse his discretion when deciding that Morris's impairment did not equal a Listing 1.04A without a medical opinion on the issue. But first, the Court will address Morris's argument that the ALJ did not articulate sufficiently his step three findings.

**B.**

Morris argues that the ALJ failed to articulate his findings at step three and discuss the listing, "leaving this Court to speculate as to which of the multiple elements of Listing 1.04(A) the ALJ apparently felt were not satisfied or equaled." [ECF No. 10, PageID.539-40]. This argument is without merit.

Courts have held that, "[w]hen considering presumptive disability at Step 3, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Grandstaff v. Comm'r of Soc. Sec.*, 2017 WL 4251734, at *7-8 (E.D. Mich. Sept. 26, 2017) (citing *Reynolds v. Comm'r*, 424 F. App'x 411, 416 (6th Cir. 2011)). But under SSR 17-2p, an ALJ "is not required to articulate specific evidence supporting his or her findings that the individual's impairment(s) does not medically equal a listed impairment." Social Security Ruling (SSR) 17-2p, 2017 WL 3928306, at *4. Rationale articulated at a later step on the issue of disability is sufficient. *Id.*

Listing 1.04A involves:

> Disorders of the Spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative

>disc disease, fact arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>>A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

The ALJ articulated why Morris's impairment did not meet Listing 1.04A:

>The claimant's degenerative disc disease fails to meet the requirements of the listing section 1.04 or any other relevant listing section because there is no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight-leg raising test with involvement of the lower back. [Morris] lacks the requisite motor and sensory deficits, and there is no evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication.

[ECF No. 8-2, Tr. 23]. The ALJ then extensively described the medical evidence in the record. [*Id.*, Tr. 25-29].

Even if the ALJ's analysis at step three were insufficient, that error would be harmless unless Morris shows that his impairment meets or equals a listing. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th

11

Cir. 2014). "The claimant bears the burden of proving every element of the listing." *McClellan v. Astrue*, 804 F. Supp. 2d 678, 688 (E.D. Tenn. 2011).

Arguing that he met the listing, Morris cites evidence that he had back and lower extremity pain associated with radiculopathy and nerve root compression. [ECF No. 10, PageID.540, citing ECF No. 807, Tr. 246, 248, 262; ECF No. 8-8, Tr. 424, 463]. He cites records describing muscle weakness, sensory loss, limited range of motion in the lumbar spine, and positive straight leg raising tests. [*Id.*, citing ECF No. 8-8, Tr. 472, 486, 424, 450, 471]. The record confirms that, in June 2016, Sirajeddin Belkhair, M.D., described Morris as having significant impingement on the nerve root and persistent symptoms of radiculopathy. [ECF No. 8-8, Tr. 471-72].

But there is substantial evidence that Morris's impairment did not meet Listing 1.04A. First, the Commissioner correctly notes that the reports cited by Morris do not specify that the leg-raising tests were positive in both the sitting and supine positions. [ECF No. 8-8, Tr. 424, 450, 471]. "Lack of evidence that the straight-leg test was positive in both the sitting and supine position is itself sufficient to preclude a claimant from meeting Listing 1.04A." *Palaghe v. Comm'r of Soc. Sec.*, No. 15-11920, 2016 WL 1714733, at *14 (E.D. Mich. Apr. 28, 2016*); see also McGuffin-Paris v.*

12

*Comm'r of Soc. Sec.,* No. CV 17-12480, 2018 WL 2994663, at *4 (E.D. Mich. Apr. 27, 2018), *adopted*, No. 17-CV-12480, 2018 WL 2981833 (E.D. Mich. June 14, 2018) (same).

Second, the records that Morris cites do not substantiate that he had muscle weakness. He cited Dr. Belkhair's June 2016 report in which the doctor wrote "yes" next to "Weakness of Limbs" in a summary of his examination. [ECF No. 8-8, Tr. 471-72]. But in the narrative section, Dr. Belkhair wrote that Morris "[d]enied any weakness" and had no "focal motor weakness," and Dr. Belkhair advised him to seek immediate medical attention "if he starts having leg weakness." [*Id*.]. Morris also cited a July 2017 report from R. Scott Lazzara, M.D., who conducted a consultative examination. [ECF No. 8-8, Tr. 479-489]. Dr. Lazzara reported that Morris had normal motor strength and muscle tone. [*Id.*, Tr. 488].

In fact, although Dr. Lazzara reported a limited range of motion in the dorsolumbar spine, Morris's other ranges of motion were normal, his sensory was intact, his extremity reflexes were normal, and his straight-leg testing was negative. [*Id.,* Tr. 486-89]. Dr. Lazzara concluded that Morris had "no active radicular symptoms." [*Id.*, Tr. 489]. Dr. Lazzara's examination results provide substantial evidence for the ALJ's finding that Morris did not have the muscle weakness, the sensory or reflex loss, or the

positive straight-leg raising test (sitting and supine) required to meet Listing 1.04A.

And those findings, along with Dr. Lazzara's conclusion that there were no active radicular symptoms, are substantial evidence for the ALJ's conclusion that the record does not reasonably support a finding that Morris's impairment is equivalent to that listing. For that reason, the ALJ did not err in making a finding on equivalency without obtaining a medical opinion on the issue. SSR 17-2p

The ALJ's decision should be affirmed.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Morris's motion for summary judgment be [ECF No. 10] be **DENIED**; that the Commissioner's motion [ECF No. 11] be **GRANTED**; and that the ALJ's decision be **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
Dated: August 2, 2019 United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.